UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN THE MATTER OF:  
ROBERT G. QUINLIVAN  
AND KIMBERLY A.  
QUINLIVAN

CIVIL ACTION

NO. 06-6634 c/w 04-2055

SECTION: "C" (1)

## ORDER AND REASONS[1]

This matter comes before the Court on defendants-appellants Robert G. and Kimberly A. Quinlivan's appeal of the Bankruptcy Court's final judgment that their debt to plaintiff-appellee Tummel & Carroll ("T&C") was subject to the exception to dischargeability of debt under 11 U.S.C. § 523(a)(2)(A). The defendants argue that: (1) the Bankruptcy Court erred in deciding that an agency relationship existed between the debtor and the allegedly malfeasant third party; and, (2) the Bankruptcy Court erred in not providing the defendant-appellants the opportunity to present additional evidence. Having considered the parties' briefs and exhibits and the applicable law, the Court hereby **AFFIRMS** the Bankruptcy Court's ruling.

---

[1] Elizabeth A. Chickering, a third year student at Tulane Law School, assisted in the research and preparation of this decision.

I.  **BACKGROUND**

In early 1993, Donald Totten ("Totten"), a California resident, contacted the plaintiff-appellee T&C to provide legal services for Worldwide Floral Exchange ("World Wide Floral"), a Louisiana corporation, for which Robert Quinlivan ("Quinlivan") served as Vice President, and World Wide Floral, Inc. ("World Wide"), also a Louisiana corporation, for which Totten served as President.  Legal services were required because both corporations were involved in a dispute with several Texas banking organizations, which had frozen the processing of credit card transactions.  A retainer agreement was executed on February 18, 1993.  Quinlivan signed both in his individual capacity and on behalf of World Wide Floral, while Totten signed separately as President of World Wide. (Rec. Doc. 4, Ex. E).

According to the plaintiff-appellee, T&C provided extensive legal services and advanced litigation expenses to Totten and Quinlivan.[2]  When an injunction was not obtained, neither Quinlivan nor Totten paid legal fees or reimbursed T&C for litigation expenses.  In the face of this refusal, T&C sued Totten, Quinlivan, World Wide, and

---

[2] Under the agreement with T&C, Totten and Quinlivan retained representation on a contingency fee basis to obtain monetary relief from the Texas bank and an injunction to remove the names of World Wide Floral and World Wide from a merchant list under which credit card transactions had been frozen.  When the companies opted to no longer prosecute their claims, the plaintiff-appellee attempted to collect the value of its legal representation based on an hourly rate, as provided under the retainer agreement.

World Wide Floral in Texas court ("the Texas action").  On December 27, 1993, the Texas action was partially resolved on summary judgment, resulting in a judgment in favor of T&C against Quinlivan. The Texas court awarded T&C $45,222.20, plus 6% pre-judgment interest and reasonable attorney's fees of 40% the amount of the judgment. (Rec. Doc. 4, Ex. C and H).  The state court's partial summary judgment decision contains no findings that Quinlivan incurred the debt in question under false pretenses. (See, Rec. Doc. 4, Ex. C ). On December 29, 1993, the plaintiff-appellee filed a motion to sever the claims against Totten from those against Quinlivan, noting that "[n]one of the pending adjudicated claims involve joint liability."  (Rec. Doc. 4, Ex. A). With the claims severed, the Texas court on March 24, 1995 dismissed with prejudice all fraud claims against Totten and awarded T&C damages of $36,000 against Quinlivan based on a theory of quantum meruit. (Rec. Doc. 4, Ex. B).  The Texas judgment was made executory in Louisiana on July 29, 1994 ("Louisiana judgment"), with prior Notice and Petition to Enforce Foreign Judgment served on the defendant on April 30, 1994.

On October 11, 1996, Quinlivan filed for bankruptcy under Chapter 7.  As a matter of some portent, Quinlivan failed to list the Louisiana executory judgment by T&C , which was in excess of 50% of the total value of creditor claims against Quinlivan. After the plaintiff filed a Complaint to exempt the dischargeability of the debt from the Louisiana judgment, a hearing in the United States Bankruptcy Court

3

("Bankruptcy Court") was conducted on May 24 and June 29, 2004.  There, Judge Brown found that the defendant made no fraudulent misrepresentations to the plaintiff prior to the execution of retainer agreement.  (Rec. Doc. 4, Ex. F, Record of Bankruptcy Proceeding, *Quinlivan v. Tummel & Carroll*, Bk. No. 96-14923, May 24, 2004 at 135-136 [hereinafter "Transcript I"]).  The judge also found that any representations by Totten were "not made in the presence of the debtor [Quinlivan] nor was there any indication that the debtor joined in or ratified [Totten's representations]." (Rec. Doc. 4, Ex. G, Record of Bankruptcy Proceeding, *Quinlivan v. Tummel & Carroll*, Bk. No. 96-14923, June 29, 2004 at 153-156 [hereinafter "Transcript II"]).  Finally, the judge found no evidence otherwise that any agency agreement existed between Quinlivan and Totten.  Consequently, the Bankruptcy Court ruled that T&C did not meet the elements under 11 U.S.C. § 523 (a)(2)(A) such that the plaintiff would be entitled under the statutory exception to discharge and could recover its debts from the defendant. Transcript I at 137-138.  The Bankruptcy Court also ruled that Quinlivan's failure to list the T&C judgment did not reveal an intent to fraud. *Id*. 142-147.

Pursuant to 28 U.S.C. § 158(a)(1), the plaintiff appealed the final judgment by the Bankruptcy Court.   This Court affirmed the Bankruptcy Court's ruling finding that the fraud of an alleged agent could not cause a debt to be excepted from discharge.  Following the affirmance, T&C appealed to the Fifth Circuit Court of Appeals.

4

The court of appeals reversed and remanded to the Bankruptcy Court for further proceedings. Specifically, the Fifth Circuit held that the fraud of an agent could be imputed to the principal under § 523 (a)(2)(A) and remanded the case for decisions on (1) what state's law applied to determining whether an agency relationship existed between Totten and Quinlivan, and (2) whether Totten acted as Quinlivan's agent. See, *Tummel & Carroll v. Quinlivan*, 434 F.3d 314, 320 (5th Cir. 2005).

On remand, the Bankruptcy Court ordered that the parties submit briefs on the above mentioned issues. Then, on August 9, 2006, the Bankruptcy Court rendered a decision on the briefs alone, without oral argument. The Bankruptcy Court ruled that (1) Texas state agency law should apply to the case and (2) pursuant to Texas law, Totten did act as Quinlivan's agent in securing the contact for legal representation with T&C. See, Memorandum Opinion, August 9, 2006. Thus, the Bankruptcy Court granted the T&C's complaint and held that the Quinlivans' debt to T&C was not dischargeable under § 523 (a)(2)(A). The debtors now appeal that judgment.

**II.   STANDARD OF REVIEW**

The standard of review for a bankruptcy appeal by a district court is the same as when a Court of Appeals reviews a district court proceeding. See, 28 U.S.C. § 158(c)(2). Accordingly, the Court reviews the bankruptcy court's conclusions of law *de novo*,

findings of fact for clear error, and mixed questions of law and fact *de novo*. See, *In re Nat'l Gypsum Co.*, 208 F.3d 498, 504 (5th Cir. 2000). Only upon a "definite and firm" conviction that the Bankruptcy Court erred would this Court reverse the Bankruptcy Court's fact findings. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985). As for evidentiary matters, the Court applies an abuse of discretion standard when reviewing the Bankruptcy Court's decision to deny additional findings of fact. See, *Tyler v. Union Oil Co. of California*, 304 F.3d 379 (5th Cir. 2002); *Boyd v. State Farm Ins. Cos.*, 158 F.3d 326 (5th Cir.1998). Under Bankr. R. 8013, "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."

### III.   LAW AND ANALYSIS

#### A.   Existence of an Agency Relationship

In its decision, the Bankruptcy Court held that because Totten had the authority to negotiate with T&C for the Quinlivans' legal representation, an agency relationship existed between Totten and Quinlivan such that Totten's fraud was imputed to the Quinlivans and the exception to the dischargeability of debt under § 523(a)(2)(A) applied to the debt owed to T&C. On appeal, the Quinlivans argue that this decision was erroneous for several reasons. The Quinlivans argue that Totten was not their agent because they never affirmatively held Totten out as their agent, nor did they ever

voluntarily permit Totten to act in an unauthorized manner. Also, T&C did not actually believe Totten had the authority to bind the Quinlivans, as evidenced by the fact that T&C required the Quinlivans to sign separate representation and termination agreements.

In response, T&C argues that Totten was the Quinlivans' agent because they allowed Totten to contact T&C regarding legal services for the Quinlivans' and their company; Totten was the sole negotiator with T&C over the legal services; and the Quinlivans signed and returned the Representation Agreement without ever attempting to contact or negotiate with T&C individually. T&C argues that the fact that they required the Quinlivans to sign separate representation and termination agreements goes to the scope of Totten's authority to bind the Quinlivans, and says nothing about whether Totten was the Quinlivans' actual or apparent agent.

The parties do not dispute the bankruptcy court's holding that Texas law controls whether an agency relationship existed between the debtors, the Quinlivans, and the allegedly malfeasant third party, Totten. Texas law does not presume agency, and the individual alleging agency has the burden of proving its existence. *Disney Enterprises, Inc. v. Esprit Finance, Inc.*, 981 S.W.2d 25, 30 (Tex.App.-San Antonio, 1998) (internal citations omitted). Absent actual or apparent authority, an agent cannot bind a principal. *Id.* An agent has actual authority to bind a principal when conduct by the

7

principal, either intentional or negligent, leads the agent to believe he has been given actual authority to represent the principal. *Welch v. Coca-Cola Enterprises, Inc.*, 36 S.W.2d 532, 539 (Tex.App.-Tyler, 2000). Apparent authority exists when the principal's conduct would lead a reasonably prudent person to believe that the agent possessed the authority to act on behalf of the principal. *Disney Enterprises*, 981 S.W.2d at 30. Only the conduct of the principal, leading one to suppose that the agent has the authority he purports to exercise, may charge the principal through the apparent authority of the agent. *Southwest Title Ins. Co. v. Northland Bldg. Corp.*, 552 S.W.2d 425, 428 (Tex. 1977).

The Court finds that the Quinlivans' behavior would have led a reasonable person to believe that Totten had the authority to act on their behalf, thus creating an agency relationship. The Quinlivans knew Totten contacted T&C regarding his or her legal representation. This knowledge, and the Quinlivans' failure to prevent Totten from discussing their personal legal situation with T&C, would allow a reasonable person to believe Totten was the Quinlivans' agent because a reasonable person would not knowingly allow an unauthorized agent to contact and discuss their personal legal matters with potential representation. Additionally, by accepting the terms Totten negotiated with T&C for legal representation without raising an issue of Totten's authority to act for them, the Quinlivans led T&C to reasonably believe that Totten had the authority to negotiate on the Quinlivans' behalf. The Quinlivans' lack of

involvement in the discussion of the terms and conditions of T&C's legal representation, coupled with their acceptance of the Representation Agreement negotiated by Totten, created the reasonable inference that Totten was the Quinlivans' apparent agent. Accordingly, the Court finds that the Bankruptcy Court's holding that Totten acted as the Quinlivans' agent in negotiating the contract for legal services with T&C under Texas state agency laws was not erroneous.

**B.     Defendant-Appellant's Opportunity to Present Additional Defenses**

On remand from the Fifth Circuit, the Bankruptcy Court granted T&C's complaint to except the Quinlivans' debt to T&C from discharge upon a finding of agency, without allowing debtors to present any additional defenses. Specifically, the Quinlivans contend that the Bankruptcy Court denied them their right to argue that T&C is judicially estopped from recovering the full amount of legal fees and costs associated with the Texas litigation.

Fed.R.Civ.P. 8(c) provides that parties must set forth all affirmative defenses, including estoppel, in their responsive pleadings. Failure to raise an affirmative defense under Rule 8(c) in a party's first responsive pleading generally results in a waiver of that defense. *Allied Chemical Corp. v. Mackay*, 695 F.2d 854, 855 (5th Cir. 1983). However, if the matter is raised in the trial court in a manner that does not result in unfair surprise, technical failure to comply with Rule 8(c) is not fatal. *Id.* at 856.

9

In the instant case, defendant Quinlivan raised the affirmative defense of estoppel, apparently for the first time, on appeal to this Court from the trial court's ruling. The debtors assert estoppel as a defense to the amount of debt recoverable, an issue that has been before the Bankruptcy Court from the beginning of the present proceedings. Nothing about the Fifth Circuit's decision to remand or the Bankruptcy Court's grant of the exception to dischargeability altered or changed the amount T&C seeks to recover from the Quinlivans. This defense to the amount owed should have been brought up and argued before the Bankruptcy Court in response to T&C's initial complaint. The debtors had ample time and opportunity while before the Bankruptcy Court to assert this defense, and to allow them to argue it now would be unfairly prejudicial to the plaintiff-appellee. Thus the Court holds that the Bankruptcy Court did not err in granting plaintiff-appellee's complaint to determine the dischargeability of the debt without providing the defendant-appellants the opportunity to present additional evidence.

## IV.  CONCLUSION

For the reasons stated above,

IT IS ORDERED that the Bankruptcy Court's final judgment is hereby **AFFIRMED.**

New Orleans, Louisiana, this 29th day of June, 2007.

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE